UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Gardner White Furniture Co., Inc.,

     Plaintiff,   Case No. 16-cv-10865

v.           Judith E. Levy
            United States District Judge
Affiliated FM Insurance Co.,
            Mag. Judge Anthony P. Patti
     Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [18] AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [17]**

Before the Court are plaintiff Gardner White Furniture Co., Inc.'s motion for partial summary judgment (Dkt. 17), and defendant Affiliated FM Insurance Co.'s motion for summary judgment. (Dkt. 18.)

For the reasons set forth below, defendant's motion for summary judgment is granted, and plaintiff's motion for partial summary judgment is denied.

I.  Background

Plaintiff Gardner White Furniture Co., Inc. operates furniture retail sales facilities and warehouses in Michigan. (Dkt. 12 at 1–2.)

Defendant Affiliated FM Insurance Co. is an insurance company that issued an insurance policy to plaintiff. (*Id.* at 2.)

On or about August 19, 2014, plaintiff sustained damage from a severe storm to its retail store located at 7680 Telegraph Road, Taylor, Michigan. (Dkt. 12 at 3.)

Thereafter, plaintiff submitted a claim for storm and wind loss to defendant. On November 6, 2014, defendant sent plaintiff an advance payment on the claim for $200,000. (Dkt. 19-2.)

On December 11, 2014, plaintiff's contractor, Professional Renovation Services, LLC ("PRS"), provided plaintiff with a preliminary loss valuation of the repair work, which listed a replacement cost value ("RCV") of $545,867.15, actual cash value ("ACV") of the loss of $416,684.09, and depreciation of $129,183.06. (Dkt. 17 at 14; Dkt. 17-4 at 2.)

On January 16, 2015, a proposed valuation was discussed by the parties. This proposal indicated that the replacement cost value was $545,510.88, the actual cash value was $335,816.11, and withheld depreciation was therefore $209,694.77. (Dkt. 17-4 at 3.) On January

20, 2015, defendant accepted the proposed amounts.  (Dkt. 19-4 (email from Sorrell to Kniivila).)

After these discussions, defendant provided a total of $362,240.29 (including the $200,000 advance), consisting of $36,424.18 for emergency service costs and $325,816.11, which was the actual cash value after applying the $10,000 deductible, to indemnify plaintiff.  (Dkt. 15 at 3; Dkt. 17 at 15; Dkt. 19-2 at 2–3; Dkt. 19-8 at 2; 19-9 at 2.)  As plaintiff was informed along with the February 18, 2015 payment of $125,816.11, the payment "represents the ACV [actual cash value] payment of the above captioned claim," which added to the $200,000 advance payment, represented the entire ACV agreed to on January 20, 2015.  (Dkt. 19-8.)

Plaintiff claims that after repairs began, it discovered the work needed was far more extensive than originally estimated.  (Dkt. 12 at 4.)

On October 1, 2015, "following the completion of the repairs to the Property" (Dkt. 17 at 15), plaintiff submitted a revised bill to defendant, stating that the actual cost of repairs completed was $576,626.39, which was over the RCV of $545,510.88 agreed on by the parties.  (Dkt. 21 at 10; Dkt. 17-5 at 2–3.)  Because the actual cost of repairs exceeded the RCV, plaintiff requested the remaining $209,694.77 in withheld

depreciation. According to plaintiff, defendant has wrongfully refused to provide the withheld depreciation. (Dkt. 12 at 4; Dkt. 17-5 at 2.)

Defendant argues that plaintiff's revised estimates include work to expand and renovate plaintiff's property, which is not covered under the policy. (Dkt. 21 at 7.) Specifically, plaintiff spent only $318,468.16 on repairs, which was less than the actual cash value the parties initially agreed on, and anything spent over that amount was for renovations unrelated to the insurance claim, and therefore not covered by the policy. (Dkt. 15 at 3.) For example, plaintiff's revised bill allegedly included charges for significant improvements, upgrades, and renovations of the storefront, employee break room, interior floors, dining room, office area, and breakroom even though not all of these areas were damaged by the storm. Further, even though defendant covered the cost of repairing the roof, $171,478, after the repairs were completed, plaintiff argued the cost defendant should have paid was not the agreed-on coverage, but $805,610. (*See* Dkts. 19, 21.)

After defendant refused to pay the depreciation, plaintiff submitted a demand for appraisal to defendant on November 23, 2015.

4

On or about December 7, 2015, defendant "denied" the appraisal, stating it had satisfied its obligations. (Dkt. 15 at 5.)

On March 9, 2016, plaintiff filed a complaint requesting an appraisal (Count I), and asserting defendant breached the policy by "failing to pay certain costs" and refusing to participate in an appraisal, thereby causing plaintiff "damages . . . that exceed $200,000." (Dkt. 1 at 5–6.) Plaintiff alleged that it had "made all repairs related to the Loss and [] spent more than Defendant's replacement cost value," and therefore was entitled to the withheld depreciation. (*Id*. at 4.)

On September 14, 2016, plaintiff filed an amended complaint, asserting the same two counts. But plaintiff newly alleged that in the alternative, it is also entitled to "submit its claim based on the actual cash value of the property lost or damaged." (Dkt. 12 at 4.)

Plaintiff now seeks a declaration that defendant must participate in an appraisal, as provided for under the policy, because the parties disagree about the actual cash value and amount of the loss (Count I). (Dkt. 12 at 5–6.) As the policy states, "In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent

and disinterested appraiser," and that both shall "select a competent and disinterested umpire," then appraise the property, and should they fail to agree on the value, "submit their differences only to the umpire." (Dkt. 12-1 at 3.) In the alternative, plaintiff also alleges breach of contract, arguing defendant was obligated to pay the actual cash value of the property lost (Count II). (*Id.* at 6–7.)

## II. Legal Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002)).

## III. Analysis

Plaintiff and defendant each seek summary judgment on Count I. Plaintiff argues defendant is required to participate in an appraisal because they disagree about the actual cash value and amount of loss. (Dkt. 17 at 23–26.) Defendant argues this provision does not apply because the dispute is about the scope of the policy, not valuation. (Dkt. 18 at 23–24.) Further, defendant argues that both claims are procedurally and substantively barred by the express terms of the contract. (*Id.* at 11.)

### *Whether Plaintiff's Claims Are Time-Barred*

Defendant argues that plaintiff's lawsuit is barred for two reasons: (1) the policy permitted a claim for actual cash value only until the repairs were complete; and (2) the policy required plaintiff to file a claim with the loss amount and actual cash value within a specific time frame. Because plaintiff did not file within the requisite time, the suit is barred, as the policy states no suit shall be permitted unless the claimant complies with all terms of the policy. (Dkt. 19 at 15–17.)

Under Michigan law, "insurance policies are interpreted in the same manner as every other contract." *Stryker Corp. v. XL Ins. Amer.*,

7

735 F.3d 349, 357 (6th Cir. 2012) (internal citation omitted). And "[i]nterpretation of the policy is a question of law." *Federal Mogul U.S. Asbestos Personal Injury Trust v. Continental Cas. Co.*, 666 F.3d 384, 387 (6th Cir. 2011). Courts look first to "the contract as a whole," and to the "language of the insurance policy." *Id.* (quoting *Citizens Ins. Co. v. Pro-Seal Serv. Grp., Inc.*, 477 Mich. 75, 82 (2007)). The terms "must be given their plain meaning," and, if a term is undefined, "the court must interpret it according to its commonly used meaning, taking into account the reasonable expectations of the parties." *Prestige Cas. Co. v. Mich. Mut. Ins. Co.*, 99 F.3d 1340, 1350 (6th Cir. 1996). A court "should not create ambiguity . . . where the terms of the contract are clear and precise," id., but if terms are ambiguous, or "susceptible to two different reasonable interpretations," then a court must construe them "in the light most favorable to the insured." *Realcomp II, Ltd. v. Ace Amer. Ins. Co.*, 46 F. Supp. 3d 736, 740 (E.D. Mich. 2014).

The policy at issue states that "within sixty days after the loss, unless such time is extended in writing by this Company, the insured shall render to this Company a proof of loss, . . . stating the knowledge and belief of the insured as to the following: time and origin of the loss .

. . the actual cash value of each item thereof and the amount of loss thereto." (Dkt. 12-1 at 3 (lines 90-122).) Actual cash value is defined as "the cost to repair or replace the property, at the time and place of the loss or damage, with material of like kind or quality, less proper deduction for obsolescence and physical depreciation." (*Id*. at 41.)

Any payment owed "shall be payable sixty days after proof of loss, as herein provided, received by this Company and ascertainment of the loss is made [] in writing." (Dkt. 12-1 at 3 (lines 150-156).)

Any amount paid out from the policy is "determined based on the cost of repairing or replacing (whichever is the lesser), at the time of loss, with materials or equipment of like kind and quality without deduction for depreciation." (Dkt.12-1 at 37 (para. 14).) Pursuant to this calculation, the insured party may "submit [a] claim based on the actual cash value of the property lost or damaged until repair and replacement has been completed," and may submit a claim for "the additional coverage which replacement cost provides if notification of intention to do so is received by this Company within 180 days after the loss or damage." (*Id*. at 38 (para. 14(b)(2)).)

Any replacement cost is subject to the further condition that "[i]n no event will payment exceed the actual cost incurred for repairs, replacement, or the limit of liability stated in this policy, whichever is the lesser." (Dkt. 12-1 at 39 (para. 14(c)(2)).)

And "[i]f the Insured fails to comply with any of the valuation provisions . . . the basis of valuation will revert to the actual cash value as defined in this policy." (Dkt. 12-1 at 39.)

Finally, no lawsuit is permitted "on this policy . . . unless all the requirements of this policy shall have been complied with." The contract contradicts itself as to whether the suit must be brought within one or two years after the loss. (Dkt. 12-1 at 3 (lines 157-161), 26 (para. 12).)

Here, the terms of the contract are clear and unambiguous. A claim must be submitted to the insurer within sixty days of the loss, and must include information such as the date of the loss and actual cash value of the loss. Actual cash value is a defined term, and clearly includes the costs of repair or replacement, and excludes depreciation. The insured may submit a claim in the amount of actual cash value, but only up and until the repairs or replacements are complete. Additionally, the insured may request replacement costs in addition to actual cash value, but must

do so within 180 days of the loss or damage having occurred. Should the additional replacement costs not be requested within this time frame, the valuation to which the insured may be entitled is the actual cash value.

Applying this interpretation, plaintiff's claim fails for several reasons, as the undisputed timeline of events makes plain. Plaintiff's loss occurred on or about August 19, 2014. At some time prior to November 6, 2014, plaintiff submitted a claim, which defendant acknowledged. On November 7, 2014, defendant advanced plaintiff $200,000. On December 11, 2014, plaintiff's contractor, PRS, submitted an estimate of the replacement cost value, depreciation, and actual cash value. The parties discussed the valuation on or around January 16, 2015, and plaintiff agreed to the proposed valuation on January 20, 2015. On February 18, 2015, defendant sent plaintiff a letter and check for $125,816.11, which constituted the outstanding balance of the ACV agreed to on January 20, 2015. Plaintiff then contacted defendant on October 1, 2015, to request the withheld depreciation because the actual cost of repairs exceeded the agreed-on RCV.

No documentation submitted by either party suggests the parties disagreed on the actual cash value prior to October 1, 2015, which is both

11

after the 180 days to claim additional coverage for repairs and after the repairs were completed. Specifically, no documentation suggests that plaintiff gave notice to defendant prior to October 1, 2015 that it intended to seek additional replacement costs. Thus, the claim is time-barred because plaintiff failed to notify defendant of its intent to seek additional costs by February 19, 2015, or 180 days after the storm damage occurred. And the claim is time-barred because plaintiff did not request a different ACV prior to repairs being completed in October 2015. Accordingly, plaintiff has not complied with the terms of the policy and is not entitled to bring suit on these claims. *See Tate v. Paul Revere Ins. Co.*, Case No. 05-cv-70438, 2005 WL 1861933, at *3 (E.D. Mich. Aug. 3, 2005) (holding claims time-barred because claim was not brought in time limits set forth in policy).

## IV. Conclusion

For the reasons set forth above, defendant's motion for summary judgment is GRANTED. (Dkt. 18.)

Plaintiff's motion for partial summary judgment is DENIED. (Dkt. 17.)

This opinion and order resolves all claims and closes the case.

IT IS SO ORDERED.

Dated: July 13, 2017           s/Judith E. Levy
Ann Arbor, Michigan          JUDITH E. LEVY
                                     United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 13, 2017.

                                               s/Shawna Burns
                                               SHAWNA BURNS
                                               Case Manager